Opinion issued March 10, 2016



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00895-CR

———————————

## LAMAR MARCELL HUNTER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Case No. 12CR1921

## MEMORANDUM OPINION

Appellant, Lamar Marcell Hunter, without an agreed punishment

recommendation from the State, pleaded guilty to the felony offense of aggravated

sexual assault of a child,[1] and the trial court assessed his punishment at confinement for twenty years.  In his sole issue, appellant contends that the trial court erred in denying his motion for new trial because he received ineffective assistance of counsel, which rendered his guilty plea involuntary.[2]

We affirm.

## Background

After a Galveston County Grand Jury issued a true bill of indictment, accusing appellant of committing the felony offense of aggravated sexual assault of a child, he, while represented by counsel, pleaded guilty to committing the offense.  In connection with his plea, appellant signed written admonishments that stated, "[i]f convicted, [he would] face the following range of punishment: . . . A term of life or any term of not more than 99 years or less than 5 years in the Institutional Division of the Texas Department of Criminal Justice and in addition, a possible fine not to exceed $10,000.00."  By signing the plea papers, appellant indicated that he was

---

[1]    *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2015).

[2]    In his first stated issue, appellant contends that the trial court's certificate of his right to appeal is defective and erroneously limits his appeal to error in the punishment hearing.  *See* TEX. R. APP. P. 25.2(d) (requiring record to contain "trial court's certification of the defendant's right to appeal under Rule 25.2(a)(2)").  However, an "Amended Trial Court's Certification of Defendant's Right of Appeal," which correctly indicates appellant's right to appeal, has since been filed with this Court.  *See* TEX. R. APP. P. 25.2(f), 34.5(c), 37.1.  Thus, appellant's first stated issue has been resolved, and we will address only appellant's ineffective-assistance claim in this opinion.

"aware of the consequences of [his] plea," his plea was made "freely and voluntarily," he was "totally satisfied with the representation provided by [his] attorney who provided fully effective and competent representation," and he understood that he was making an "open plea to the court." The trial court and appellant's trial counsel also signed the plea papers, affirming that they believed that appellant executed his plea "freely and voluntarily" and "he [was] aware of the consequences of his plea." Following a sentencing hearing, the trial court found appellant guilty of the offense and sentenced him to confinement for twenty years.

Subsequently, appellant filed a motion for new trial, arguing that he was denied effective assistance of counsel during his plea proceeding because he "was not informed by his trial counsel of the legal requirements to [obtain] deferred adjudication from the [t]rial [c]ourt." Specifically, appellant asserted that he was only "eligible for deferred adjudication" if the trial court made "a finding in open court that placing [him] on community supervision [was] in the best interest of the [complainant]." (Emphasis omitted.) And, according to appellant, his trial counsel "failed to illicit any facts" at sentencing that would have supported such a finding.

At the motion-for-new-trial hearing, appellant testified that he met with his trial counsel "over a dozen times" prior to pleading guilty. Appellant explained that he discussed "strategy" with trial counsel, and their "ultimate goal" "was to try to

get [appellant] probation."[3] Because trial counsel felt that "a trial by jury" "wouldn't go well" for appellant, he recommended that appellant "plead guilty and go ahead" with a pre-sentence investigation ("PSI"). Trial counsel told appellant that "if everything [went] well" and "the [c]ourt [had] mercy upon" him, he would obtain deferred adjudication. However, trial counsel also explained that "if [things] didn't go well," appellant could receive "prison time." Appellant ultimately pleaded guilty because of "the possibility of probation," although he knew at the time of his plea that he was "taking a chance," and he "hope[d] that maybe" the trial court would defer adjudication of his guilt.

The trial court admonished appellant about the range of punishment, explaining that he could receive "five to 99 [years] or life" and "up to a $10,000 fine." Appellant knew that "there [were] no restriction[s] on what the [trial] [j]udge could do" and the trial court "could sentence [him] to probation[] [or] to life in prison." And appellant was "well aware" of this when he pleaded guilty. Appellant also knew that the complainant "wanted [him] in prison" and her family did not want him to be placed on community supervision.

Appellant further testified that his trial counsel never explained to him that "the [trial] [c]ourt was required to find that it[] [would be] in the [complainant's]

---

[3] We note that, throughout the motion-for-new-trial hearing, the terms "probation" and "deferred adjudication" are used somewhat interchangeably.

best interest" for him to be placed on community supervision to obtain deferred adjudication. This information would have been "significant" to him because "if [he] wasn't going to get probation, [he] would have put [his case] in the hands of the jury." Thus, if appellant had known "the factual findings [that] the [trial] [c]ourt legally was required to make before [it could] put [him] on deferred [adjudication]," he would have "chose[n] not to plea."

Nicole Hunter, appellant's wife, testified that she was present during conversations between appellant and trial counsel, and their "goal" was for appellant to obtain deferred adjudication. This was also Hunter and appellant's own personal goal. The "best" strategy to achieve deferred adjudication, according to trial counsel, was for appellant to plead guilty "and go in front of the [trial] [j]udge." However, Hunter was also aware that there was a "possibility that [appellant would] go to the penitentiary." And she was not privy to "any discussions" between trial counsel and appellant "about the [j]udge . . . hav[ing] to make a factual finding" that placing appellant on community supervision "was in the [complainant's] best interest."

Trial counsel testified that he met with appellant "a dozen times" during the course of his representation, and during the meetings, he explained to appellant "what could happen to [him] if he was convicted." They also discussed "what would happen if [appellant was] to go to trial," "what could happen if [he pleaded guilty

and] went [through] a PSI," and all of the "potential outcomes" of his case, such as obtaining deferred adjudication or "prison time." According to trial counsel, it was "clear" to appellant that he could receive "prison time or probation," and appellant did not mistakenly believe that he was "guarantee[d]" deferred adjudication if he pleaded guilty. In fact, appellant knew that it was possible that he could be sentenced to "five to 99 years or life in prison," knew "he was pleading guilty without an agreement from the State," and knew "that it was entirely up to the [trial] [j]udge to . . . place him on deferred community supervision or . . . send him to the penitentiary." However, it was appellant's "goal" to obtain deferred adjudication, even though he knew that the complainant's family "was extremely opposed to [him] receiving any type of probation." Ultimately, trial counsel "recommended" that appellant "plea[d] guilty," "have a PSI," and "go to the [j]udge" for sentencing. Trial counsel and appellant discussed the fact that "a family [was] involved" in this case, as the complainant is appellant's cousin, and it would be in the "best interest" of appellant, his wife, and his family for appellant to plead guilty. Also, "maybe more importantly so," it would be in the complainant's "best interest" for appellant to plead guilty because she then would not be subjected to "a full-blown trial with [a] jury," which "would be quite traumatic" for her. At the time of appellant's plea, the complainant "was in school," "had a[] child," and "was moving on with her life."

As trial counsel explained, "[W]hy mess that up? Why put her through the trauma of going through a full-blown trial, if her life had to some extent turned around"?

Trial counsel did admit that, prior to appellant entering his guilty plea, he never spoke with him about the "specific" factual finding the trial court had to make for appellant to obtain deferred adjudication. However, trial counsel explained that, during the sentencing hearing, he elicited testimony about the "possibility" of the families of appellant and the complainant "reuniting and healing," and this testimony was "something the [trial] [c]ourt could have taken into consideration" when deciding what was in the complainant's "best interest" and whether appellant should obtain deferred adjudication. Thus, "there [is] testimony in the record" upon which "the [trial] [c]ourt could have found" that it was in the "best interest" of the complainant that appellant obtain deferred adjudication.

After hearing the evidence, the trial court denied appellant's new-trial motion, explaining,

> When we had the sentencing hearing, I am very confident [appellant] fully understood the full range of punishment. Probation was argued for[, but] the fact [that] th[e] specific finding [of the complainant's best interest was] not . . . discussed and [it] making a difference . . . is not at all credible. [Appellant] simply made a bad choice. . . .
>
> . . . .
>
> . . . [Appellant] simply chose a wrong goal here of getting probation. And based on th[e] facts [of the case], there was absolutely no way in Heaven I was ever going to give [him] probation.

7

## Standard of Review

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Appellant has the burden of establishing both *Strickland* prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

Because appellant presented his ineffective-assistance claim to the trial court in a motion for new trial and received a hearing on his motion, we analyze his issue

under an abuse of discretion standard as a challenge to the denial of his motion. *Biagas v. State*, 177 S.W.3d 161, 170 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). If there are two permissible views of the evidence, the trial court's choice between them cannot be held to be clearly erroneous. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Webb*, 232 S.W.3d at 112.

We note that trial courts are in the best position to "evaluate the credibility" of witnesses and resolve conflicts in evidence. *See Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). And a trial court may choose to believe or disbelieve all or any part of the witnesses' testimony. *See id.* at 234.

### Ineffective Assistance of Counsel

In his sole issue, appellant argues that the trial court erred in denying his motion for new trial because his trial counsel did not provide effective assistance when he failed to advise appellant that to obtain deferred adjudication, the trial court

9

would have to specifically find that it was in the "best interest" of the complainant to place appellant on community supervision.[4] Appellant further argues that because his trial counsel was "ignorant" of this required fact finding and improperly "advised [him] to plead guilty" and "elect[] to have the trial [court] assess punishment," he entered his guilty plea involuntarily.

To be valid, a plea must be entered voluntarily, knowingly, and intelligently. TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp. 2015); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008). "Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364, 130 S. Ct. 1473, 1480–81 (2010) (internal quotations omitted); *see also Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009) ("There is no doubt that an accused has a Sixth Amendment right to the effective assistance of counsel in guilty plea proceedings."). A plea is not voluntarily and knowingly entered if it is made as a result of ineffective assistance of counsel. *Ulloa v. State*, 370 S.W.3d 766, 771 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

---

[4] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a) (Vernon Supp. 2015) ("A judge may place on community supervision under this section a defendant charged with an offense under Section 21.11, 22.011, or 22.021, Penal Code, regardless of the age of the victim, . . . only if the judge makes a finding in open court that placing the defendant on community supervision is in the *best interest of the victim*." (emphasis added)).

To establish prejudice in the context of a guilty plea, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[5] *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); *see also Ex parte Moussazadeh*, 361 S.W.3d 684, 690–91 (Tex. Crim. App. 2012). We make the prejudice inquiry on a case-by-case basis, considering the circumstances surrounding the plea and the gravity of the alleged failure. *Ex parte Obi*, 446 S.W.3d 590, 596 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We note that "[s]urmounting *Strickland*'s high bar is never an easy task," and "it is often quite difficult for [defendants] who have acknowledged their guilt to satisfy *Strickland*'s prejudice prong." *Padilla*, 559 U.S. at 371 & n.12, 130 S. Ct. at 1485 & n.12.

Here, appellant relies upon his own testimony at the motion-for-new-trial hearing to establish that "but for [his trial] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill*, 474 U.S. at 59, 106 S. Ct. at 370; *see also Jackson*, 973 S.W.2d at 956 (defendant's burden to establish prejudice by preponderance of evidence). Specifically, appellant directs this Court to the following portion of his testimony:

---

[5] Here, it is unnecessary to address the "performance component" of appellant's ineffective-assistance claim. *See Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 2069 (1984); *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

11

Q.   At any point did [trial counsel] have a conversation with you . . . about a factual finding that the [trial] [c]ourt was required to find that it's in the [complainant's] best interest that you get probation?

A.   No, he hadn't --

Q.   Okay.

A.   -- at all.

Q.   Is that significant to you?

A.   Yeah, it would be significant.

Q.   Why?

A.   Because if that was the case, . . . if I wasn't going to get probation, I would have put it in the hands of the jury.

Q.   Why would that have changed your mind?

A.   Because of the fact that going a route where I didn't know I have any chance for probation would have changed my mind so I could take the chances to have probation so I could be with my family.

. . . .

Q.   And ultimately, why did you plea[d] guilty?

A.   . . . [Trial counsel] said I have to plead guilty to go through the PSI process. And by plea[d]ing guilty, it would show mercy -- I show that -- plea[d]ing guilty would allow me to go through the PSI and the [trial] [c]ourt -- and if that's the case, maybe the [c]ourt will show mercy upon me. If I apologize and say that I am apologetic -- and I know that I was. But knowing that was the opportunity, the strategy, that the possibility of probation was there.

12

Q. But at no time did y'all discuss the factual findings the [trial] [c]ourt legally was required to make before [it] put you on deferred [adjudication]?

A. No sir.

. . . .

Q. But if you would have known -- let me rephrase. If you would have known the law that you know now --

A. I wouldn't have.

Q. You would have chosen a different course of action?

A. Yes, sir, I would have.

Q. You would have chose[n] not to plea --

A. Yes, sir.

Q. -- if you would have known that?

A. Yes, sir.

Appellant's trial counsel, however, provided a different account of the circumstances surrounding appellant's guilty plea. In fact, trial counsel testified that he and appellant had discussed the fact that "a family [was] involved" in this case, as the complainant is appellant's cousin, and it would be in the "best interest" of appellant, his wife, and his family for him to plead guilty. And "more importantly," it would be in the complainant's "best interest" for appellant to plead guilty because she would then not be subjected to "a full-blown trial with [a] jury," which "would be quite traumatic" for her. "[A] full-blown trial" would be especially "traumatic"

because the complainant "was moving on with her life," she "was in school," and she "had a[] child." Thus, trial counsel and appellant decided not to "mess that up." As trial counsel explained, "Why put [the complainant] through the trauma of going through a full-blown trial, if her life had to some extent turned around"?

Appellant similarly testified that he had pleaded guilty "in order to absolve [himself], and hopefully, to provide some sort of healing for the victim." And he confirmed that he had previously testified at the sentencing hearing: "I want the family to heal. I want to be able to have a relationship with [the complainant] at some point. I want her to know how sorry I am." (Internal quotations omitted.)

We cannot conclude on this record that the trial court abused its discretion in denying appellant's motion for new trial. The only evidence that appellant presented to establish that he would have insisted on going to trial was his own testimony that he would have "chosen a different course of action" and "would have put [his case] in the hands of the jury" had he known that in order to obtain deferred adjudication, the trial court had to specifically find that it was in the best interest of the complainant that he be placed on community supervision. The trial court, however, did not find appellant's testimony to be credible.

A trial court does not abuse its discretion in not believing a defendant's testimony. *See Kober*, 988 S.W.2d at 234 (trial court may choose to believe or disbelieve all or any part of witnesses' testimony); *Ex parte Ali*, 368 S.W.3d 827,

14

840–41 (Tex. App.—Austin 2012, pet. ref'd) (trial court not required to believe defendant's statement "he would have insisted on going to trial"); *Ex parte Fassi*, 388 S.W.3d 881, 888 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (trial court "free to disbelieve [defendant's] self-serving testimony that he would not have pled guilty if he had been aware of the immigration consequences of his plea"); *Messer v. State*, 757 S.W.2d 820, 827–28 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (trial court "not required to accept as true the testimony of the accused or any defense witness" even if "it was not contradicted").

Simply put, here, "appellant's ability to show he suffered prejudice arising from [his trial] counsel's [allegedly] deficient advice depend[ed] critically upon his credibility." *Ex parte Hamad*, No. 05-11-01599-CR, 2012 WL 604029, at *5 (Tex. App.—Dallas Feb. 27, 2012, no pet.) (not designated for publication); *see also Ex parte Victorio*, No. 05-11-01008-CR, 2012 WL 286803, at *4–6 (Tex. App.—Dallas Feb. 1, 2012, pet. ref'd) (not designated for publication) (concluding defendant did not meet his burden under second prong of *Strickland* test where trial court did not find him credible). And the trial court specifically stated that it did not find appellant's evidence to be "credible." We must defer to the trial court's credibility determinations. *See Kober*, 988 S.W.2d at 233.

Accordingly, we hold that appellant has not met his burden under the second prong of the *Strickland* test.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).